IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| SORAYA DIASE COFFELT, JOHN CANEGATA AND RONALD CHARLES,<br><br>PLAINTIFFS,<br><br>V.<br><br>CAROLINE F. FAWKES, IN HER OFFICIAL CAPACITY AS SUPERVISOR OF ELECTIONS FOR THE VIRGIN ISLANDS AND GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>DEFENDANTS. | 1:14-CV-25<br><br>ACTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY RELIEF |

**MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION**

Soraya Diase Coffelt, John Canegata and Ronald Charles seek a temporary restraining order and preliminary injunction preventing Caroline F. Fawkes, the Virgin Islands Supervisor of Elections, from disqualifying Diase Coffelt and Canegata from running for governor and lieutenant governor of the Virgin Islands in the November 4, 2014 election and requiring Defendant Fawkes to place them on the official ballot for that election. **Immediate action is required because Defendant Fawkes has stated that on Friday, May 30, 2014, she will disqualify Diase Coffelt and Canegata from the November 4, 2014 election based upon her incorrect interpretation of, and unconstitutional application of, 18 V.I.C. § 342a.**

1

**INTRODUCTION AND BACKGROUND**[1]

Diase Coffelt is a candidate for governor of the Virgin Islands and has chosen Canegata to run as her running mate. Diase Coffelt is a registered voter and in the official records of the Board of Elections is not aligned with any political party – she is running as an independent or "no party" candidate. Canegata is a registered Republican. Diase Coffelt has chosen to associate with Canegata in part because he has relationships with segments of the Virgin Islands political community (Republicans) that enhance Diase Coffelt's ability to communicate her political message and vision for the Virgin Islands to the broadest possible audience. Canegata shares Diase Coffelt's vision for the Virgin Islands and seeks to advance it in the political process.

Plaintiff Ronald Charles is a registered voter and citizen and resident of St. Croix. He is listed as "no party" with the Elections System of the Virgin Islands and is not enrolled or registered as a member of a political party. He signed a nomination petition pursuant to 18 V.I.C. § 381 seeking to have Diase Coffelt and Canegata placed on the general election ballot as candidates for governor and lieutenant governor, respectively. As a registered voter, he has a right to choose among candidates placed on the ballot without unconstitutional exclusions or restrictions. *Thorsted v. Gregoire* 841, F.Supp. 1068, 1073 (W.D. Wash. 1994).

---

[1] The factual statements in this motion are supported by the allegations in the complaint. The complaint is verified by all three plaintiffs.

Defendant Fawkes seeks to preclude Diase Coffelt and Canegata from associating with each other in the political arena and to prevent Charles from voting for them in the November 4, 2014 election. As Supervisor of Elections, she has issued Notices of Defect under 18 V.I.C. § 411(c) (Exhibits A and B to the complaint) and intends to disqualify Diase Coffelt and Canegata as candidates for governor and lieutenant governor, respectively. She intends to take this action today, May 30, 2014. Her stated reason for doing so is her interpretation of 18 V.I.C. §342a: She asserts that it prohibits a person registered to a political party from running as a no-party or independent candidate. Defendant Fawkes's position is untenable and violates Diase Coffelt's, Canegata's, and Charles's First Amendment rights

## RELEVANT SECTIONS OF THE REVISED ORGANIC ACT AND THE V.I. ELECTION CODE

The Revised Organic Act, 48 U.S.C. §1591, specifies that in an election, the governor and lieutenant governor of the territory "shall be chosen jointly, by the casting by each voter of a single vote applicable to both officers."

The form of official ballots for the territory is established in 18 V.I.C. § 492(a), which requires that the official ballot be "in substantially" the form set forth in the statute (a sample form is printed in 18 V.I.C. § 492(a)). As it pertains to the election of the governor and lieutenant governor and the instant motion, the form provides for listing the identity of the party of the gubernatorial candidate only – the space for listing a party of the lieutenant governor candidate is left blank.

The statute relied upon by Defendant Fawkes to disqualify Diase Coffelt and Canegata provides:

> Any person running for public office must run as a candidate *consistent with* the political party designation under which the candidate is registered at the time of the filing of the nomination petition, whether the political party designation indicates an affiliation with a political party as defined in section 301 or otherwise.

18 V.I.C. § 342a (emphasis added). This statute is placed in Subchapter I of Chapter 17 ("Nomination of Candidates") of Title 18. Subchapter I deals with primary elections. Although poorly worded,[2] the statute appears designed to prevent a candidate from either (1) running in a party primary and simultaneously seeking to be placed on the ballot as a non-party candidate or (2) running in the party primary and then upon losing as the party candidate, choosing to run as an independent.[3]

It is important to note the distinction between subchapter I and subchapter II of chapter 17 of Title 18. Subchapter I ("Nomination at Primaries") deals with the nomination of candidates through recognized political parties. Only "registered and enrolled" members of the applicable party may nominate a candidate to run in the

---

[2] The statute is vague because it requires that the candidate run "consistent with" the political party designation. This could be interpreted as prohibiting a candidate from adopting positions that are inconsistent with the political party's platform. Thus, the statute maybe void for vagueness and, if interpreted to require that a candidate not depart from a political party's platform, imposes additional unconstitutional restraints on speech.

[3] Under the current elections calendar, this latter option is not a possibility since all candidates for office, even non-party candidates, must be nominated before the party primaries are held. On information and belief, at the time 18 V.I.C. § 342a was enacted, the elections calendar did allow for the latter option and the statute was enacted specifically because individuals had taken advantage of that option.

primary on behalf of the political party. 18 V.I.C. § 345(b)(1). Consequently, a non-party elector (voter) cannot participate in the process of placing a candidate running in a political party's primary on the ballot in the general election. Similarly, the candidate must not only be registered and enrolled in the appropriate political party, 18 V.I.C. § 344(a), but that candidate must also provide an affidavit attesting to membership in that party. 18 V.I.C. § 348(6).

Subchapter II specifies a procedure for nominating candidates that is "[i]n addition to the party nominations made at primaries." 18 V.I.C. §381(a). Under subchapter II, an elector of *any* party or *no* party may nominate an individual to run for office outside of the party primary process. *See* 18 V.I.C. § 381(c) (setting forth requirements for individuals signing a nomination paper and including no requirement relating to party affiliation or lack of such affiliation). Therefore, voters registered to any party, or no party, can sign the nomination petition. Likewise, there is no requirement in subchapter II that the candidate be an independent or "no party" candidate; and, unlike the subchapter I affidavit, the affidavit of a candidate seeking to get on the ballot through subchapter II does not have any requirement that the candidate attest to membership in, or lack of membership in, any political party. 18 V.I.C. § 383.

### DIASE COFFELT AND CANEGATA WERE NOMINATED UNDER SUBCHAPTER II

Canegata did not run for, or seek the Republican Party nomination to run for, lieutenant governor. Indeed, because no one in the Republican Party stepped forward to run for governor and the governor and lieutenant governor must be elected in a single vote, Canegata – through no fault of his own – had no opportunity to run on a

Republican ticket or compete in a Republican primary. (The Republican Party is not offering candidates for the governor/lieutenant governor election to be held in November 2014.) Instead, Canegata and Diase Coffelt sought the nomination for lieutenant governor and governor under 18 V.I.C. § 381. As noted, there is no requirement for party membership, or lack of party membership, to be nominated as a candidate under 18 V.I.C. § 381; and, there is no requirement that a candidate give an affidavit attesting to membership, or lack of membership, in any party. 18 V.I.C. § 383.

Diase Coffelt and Canegata timely submitted the requisite nominating petitions to be included on the ballot as candidates for governor and lieutenant governor. Defendant Fawkes, in her official capacity as Supervisor of Elections, has issued a "Notice of Defect" to both Diase Coffelt and Canegata under 18 V.I.C. § 411, informing them that she has determined that there is a defect in their nominating papers. In accordance with 18 V.I.C. § 411(c), she has informed them that if they do not "correct" this defect by Friday, May 30, 2014, they will be disqualified and their names will not be placed upon the November 2014 general election ballot.

The sole "defect" noted by Defendant Fawkes in the Notice of Defect is her assertion that 18 V.I.C. § 342a prohibits "persons registered to a political party from running as no-party or independent candidate[s]." She further interprets the statute to require that the running mate of the candidate for governor "be of like independent party." *See* Complaint, Exhibit B, Notice of Defect issued to Diase Coffelt; Complaint, Exhibit A, Notice of Defect issued to Canegata.

It seems that Defendant Fawkes believes that because Diase Coffelt is running as an independent, this means that Canegata must also run as an independent. But, there is no requirement that he do so. Defendant Fawkes appears to have confused the requirement in the Revised Organic Act that the governor and lieutenant governor "shall be chosen jointly, by the casting by each voter of a single vote applicable to both officers," *see* 48 U.S.C. § 11, with some unwritten requirement that the two candidates must be from the same party. There is no such requirement.

While traditionally, the governor and lieutenant governor have hailed from the same party, there is no requirement that they do so – just as there is no requirement that they be selected from opposite islands although by tradition (and smart politics) the two candidates typically hail from opposite island districts. Indeed, in Virgin Islands history, Governor Juan F. Luis, a member of the Independent Citizen's Movement party ran and was elected with his running mate, Democrat Henry Millin. Moreover, 48 U.S.C. § 1596 provides for the governor to fill a permanent vacancy in the lieutenant governor's office (with the advice and consent of the legislature) and imposes no requirement that the appointee come from the same political party as the governor. And in 1973, Republican governor Melvin Evans appointed Democrat Anthniel Ottley as his lieutenant governor to fulfill such a vacancy.

**STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER**

As stated by this Court in *Olmeda v. Schneider*, 889 F.Supp. 228 (D.V.I. 1995)

> The grant or denial of a preliminary injunction rests in the discretion of the trial court and may be reversed on appeal only if the decision below was an abuse of discretion. *See, e.g., Brotherhood of Locomotive Engineers*

*v. MO–KS–TX R. Co.*, 363 U.S. 528 (1960); *A.L.K. Corporation v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir.1971). Requests for injunctive relief invoke the court's equitable discretion and resolving such motions requires a delicate balance of factors. There are four general requirements:

   (1)   the moving party must produce evidence sufficient to convince the court that in the absence of the relief he will suffer irreparable injury;

   (2)   the moving party must show a likelihood of success on the merits;

   (3)   that granting the relief will not result in greater harm to the other party; and

   (4)   that granting the relief will be in the public interest.

*Olmeda*, 889 F.Supp. at 231 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975);

*ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987); *SI Handling Systems, Inc.*

*v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985)).

   All of the above factors are balanced with regard to any final decision and the strength of any above factor may affect the necessary showing with regard to another. *Marxe v. Jackson*, 833 F.2d 1121, 1128 (3d Cir.1987).

*Olmeda*, 889 F.Supp. at 231.

### BECAUSE THERE IS NO BASIS FOR DEFENDANT FAWKES TO DISQUALIFY DIASE COFFELT AND CANEGATA, THEY HAVE SHOWN A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

As described, there is simply no basis in either the Revised Organic Act or the Virgin Islands Code to require that the candidates running on a joint ticket for governor and lieutenant governor be from the same party. There is no requirement that the lieutenant governor's party affiliation appear on the ballot and, indeed, the

sample ballot adopted as part of the Virgin Islands Election Code specifically omits the identity of the lieutenant governor's party affiliation. *See* 18 V.I.C. § 492(a). Further, 18 V.I.C. § 492(d) specifies that "opposite and under the name of each candidate nominated by nomination papers *which did not specify the name or appellation of the political body which he represents, shall* be printed the word 'Independent'." (Emphasis added.) In other words, if a member of the Republican, Democrat or Independent Citizens Movement Parties seeks nomination outside of the party primary process and does not specify his or her party membership on the nomination petition, the Supervisor of Elections is *mandated* to list that individual as "independent."

In ballot access cases such as this one, the Third Circuit follows the U. S. Supreme Court's analysis in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). In *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997), the Third Circuit observed that "[i]n assessing these claims," *Anderson* "explained that each provision of a state's election code inevitably affects the right of association and the right to vote." *Id*. at 880. While the Third Circuit acknowledged that states have a right to regulate elections so that they are fair and honest and have some form of order, it recognized that a plaintiff's constitutional rights are nevertheless critical:

> [I]n assessing the merits of a constitutional challenge to a specific provision of a state's  election  laws,  a court must carefully weigh competing factors. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not  only  determine  the  legitimacy  and strength of those

9

>   interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* Moreover, "[i]f the burden on the plaintiff's rights is severe, the state's interest must be compelling and the law must be narrowly tailored to serve the state's interests." *Patriot Party of Allegheny County v. Allegheny County Department of Elections*, 95 F.3d 253, 258 (3d Cir. 1996).

The rights Diase Coffelt and Canegata seek to assert are fundamental First Amendment rights – the right to run for public office in an effort to advance their ideas for improving the lives of Virgin Islanders and the right to do so by freely associating with each other in an effort to reach the broadest audience possible. The right that Charles seeks to exercise is also fundamental – the right to vote for the candidate of his choice and the right set forth in 18 V.I.C. §381 to select a standard bearer. *See Patriot Party v. Allegheny County*, 95 F.3d 253 (3d Cir. 1996). There can be no doubt that these rights are entitled great weight. By contrast, there is no *legitimate* government interest in requiring that the governor and lieutenant governor be from the same party. If having the governor and lieutenant governor be from the same party was a true concern, then Virgin Islands law would specifically require it; and 48 U.S.C. § 1596 would not allow the governor to fill a vacancy in the lieutenant governor's office with someone from a differing party.

In *Meyer v. Grant*, 486 U.S. 414, 422-23 (1988), the Supreme Court struck down on First Amendment grounds an election law that "limit[ed] the number of voices who will convey [the candidates'] message" because it "limit[ed] the size of the audience

they can reach." To the extent that Defendant Fawkes's interpretation of the statute is correct, the statute is unconstitutional and plaintiffs will prevail. And of course if her interpretation is incorrect, then the plaintiffs will likewise prevail.

Individual voters have nominated their candidates, Diase Coffelt and Canegata, in accordance with 18 V.I.C. § 381 – the process for selecting candidates outside of – and free of influence from – the established political parties in the Virgin Islands. As in the case in *Patriot Party*,

> a vote cast for a party outside the current political mainstream is burdened by more than the minor party's lack of political support. The . . . election code has erected an artificial barrier that prevents a minor party from forming consensual political alliances, and individual supporters of the minor party ultimately bear the burden.

*Id.* at 264. The Third Circuit deemed this practical effect to be a critical ingredient in creating a severe burden on the First Amendment right of free association. So too here. Section 342a effectively prevents political party splinter groups or other disaffected members of a political party from registering their disagreement with the party unless the disaffected members' candidate is willing to completely break from the party by resigning.

    **2.**     **IRREPARABLE HARM**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Under *Elrod*, harm that is threatened and occurring at the time of a motion for equitable relief "is sufficient to show irreparable harm because the timeliness of speech is often critical." *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3d Cir. 1998). "It is purposeful

unconstitutional [government] suppression of speech [which] constitutes irreparable harm for preliminary injunction purposes." *Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989).

Here, the Supervisor of Elections seeks to deny Diase Coffelt and Canegata the right to associate with each other and the opportunity to reach the largest possible audience with their message solely on the basis of Canegata's party affiliation. Her actions will keep them off of the ballot, which will further impair their ability to spread their political message and offer the voters another choice. In *Jones v. McGuffage*, 921 F.Supp.2d 888, 901 (N.D.Ill. 2013) the court noted that it was "self-evident"

> that an otherwise qualified candidate would suffer irreparable harm if wrongfully deprived of the opportunity to appear on an election ballot; so would the citizens who would have voted for him and the members or prospective members of the party, if any, who supports the candidate.

In fact, it was so "self-evident" that the government did not even contest the issue of irreparable injury. *Id.* Irreparable injury exists even when the issue is *not* whether the candidate's name will be on the ballot; but instead is "only" whether or not the candidate is entitled to be listed as a candidate for the same office under two different political organizations (where the government intends to only list the candidate in association with one of the two organizations). *See Credico v. New York State Bd. of Elections*, 751 F.Supp.2d 417, 420 (E.D.N.Y. 2010).

### 3. CONSIDERATION OF THE HARM TO DEFENDANT

If a plaintiff shows a substantial likelihood that a challenged law infringes upon constitutional rights, "no substantial harm to others can be said to inhere in its

enjoinment." *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). The Defendants will not suffer any harm by the inclusion of Diase Coffelt and Canegata on the ballot. There is no issue of voter confusion – particularly since 18 V.I.C. § 411(d) mandates that Canegata be listed as an independent candidate regardless of his affiliation with a political party. There is no identifiable harm that can occur if the voters elect a "no-party" governor and Republican party lieutenant governor – The territory survived when Republican Governor Evans and Democratic Lieutenant Governor Ottley served in office. It also survived when Governor Luis (ICM) and Lieutenant Governor Millin (Democrat) governed. Many other jurisdictions have survived such situations without harm.[4]

### 4. THE PUBLIC INTEREST SUPPORTS THE INJUNCTION

"There is no public interest in . . . excluding qualified candidates." *Jones*, 921 F.Supp.2d at 902. Likewise, the voters will not be burdened by the inclusion of two additional candidates on the ballot. *Id*. Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994); *cf. Cunningham v. City of McKeesport*, 807 F.2d 49, 52 (3d Cir. 1986) (vindication of Fourth Amendment right may well have served a public interest).

---

[4] Montana survived with Democrat Governor Brian Schweitzer and Republican Lieutenant Governor John Bohlinger from 2005 through 2012. (Article VI, sec.2 of the Montana constitution requires that the candidates for governor and lieutenant governor seek the office jointly.)

## CONCLUSION

Plaintiffs have established a substantial likelihood of success on the merits. The irreparable injury it will suffer if a restraining order is not granted is manifest. The public interest strongly supports the maintenance of the status quo and there is no burden on the Defendants.

Plaintiffs respectfully submit that they are entitled to the following relief at this time:

1. A temporary restraining order preventing Defendant Fawkes from disqualifying them from the 2014 general election.

2. A preliminary injunction enjoining Defendant Fawkes from disqualifying them from the 2014 general election and requiring her to place them on the ballot.

A proposed temporary restraining order is attached.

>Respectfully submitted,
>
>LAW OFFICES OF ANDREW C. SIMPSON, P.C.
>Attorneys for Plaintiffs

May 30, 2014

/s/ Andrew C. Simpson
ANDREW C. SIMPSON
2191 Church St., Ste. 5
Christiansted, VI 00820
340.719.3900 x.1
asimpson@coralbrief.com
www.coralbrief.com

## CERTIFICATION OF NOTICE

I certify that on May 30, 2014 I gave notice to the Defendants by emailing a copy of this Verified Complaint and the Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum of Law in Support of Motion to the following:

Caroline F. Fawkes: caroline.fawkes@vi.gov.

Office of the Governor:
   Michelle Meade, Esq., Chief Legal Counsel, mtmeade@gmail.com
   Elliott M. Davis, Sr. Special Counsel elliottmciverdavis@hotmail.com
   Nagesh Tammara, Asst Legal Counsel nagesh.tammara@go.vi.gov

Attorney General of the Virgin Islands
   Vincent Frazer, Esq.,   vfrazer@doj.vi.gov


May 30, 2014                                            /s/ Andrew C. Simpson