**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

|  |  |
|---|---|
| **SORAYA DIASE COFFELT, JOHN CANEGATA AND RONALD CHARLES,** ) ) ) ) |  |
| **Plaintiffs,** ) ) |  |
| v. ) ) | Civil Action No. 2014-025 |
| **CAROLINE F. FAWKES, IN HER OFFICIAL CAPACITY AS SUPERVISOR OF ELECTIONS FOR THE VIRGIN ISLANDS AND GOVERNMENT OF THE VIRGIN ISLANDS,** ) ) ) ) ) ) ) |  |
| **Defendants.** ) ) |  |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendants*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

      THIS MATTER comes before the Court on Plaintiffs' "Motion for Temporary Restraining Order" (Dkt. No. 2); Defendants' Opposition thereto (Dkt. No. 11); and the hearing held in the matter on June 3, 2014. For the reasons discussed below, the Court will enter a Temporary Restraining Order enjoining Defendants from disqualifying, pursuant to Title 18 V.I.C. §§ 342 and 342a, the nomination of Soraya Diase Coffelt and John Canegata as candidates for governor and lieutenant governor, respectively, in the November 4, 2014 general election.

1

Because Plaintiffs have already been disqualified, this Court's Order will serve to render the disqualification ineffective for such time as the Temporary Restraining Order is in place.[1]

### I. BACKGROUND

**A. Procedural History**

By Complaint filed on May 30, 2014, Plaintiffs Soraya Diase Coffelt ("Coffelt"), John Canegata ("Canegata"), and Ronald Charles ("Charles") initiated this action against Defendants Caroline Fawkes, in her official capacity as Supervisor of Elections for the Virgin Islands ("Supervisor Fawkes"), and the Government of the Virgin Islands. (Dkt. No. 1). In their Complaint, Plaintiffs request "injunctive relief enjoining the Defendants and all others acting by, through or in concert with her [sic], from disqualifying them from nomination or election in the November 4, 2014 general election[.]" (Dkt. No. 1 at 9, ¶ A). Further, Plaintiffs request declaratory relief that "Coffelt and Canegata have met the requirements of 18 V.I.C. § 381 for placement on the ballot for the November 4, 2014 general elections [sic] as candidates for governor and lieutenant governor, respectively[.]" (*Id.* at ¶ B). Finally, Plaintiffs request declaratory relief that Title 18 V.I.C. § 342a, as applied, is unconstitutional and in violation of their rights under the U.S. Constitution, Title 48 U.S.C. § 1561, and Title 42 U.S.C. § 1983. (*Id.* at ¶ C).

Together with the Complaint, Plaintiffs filed the instant "Motion for Temporary Restraining Order . . . and Memorandum of Law in Support of Motion." (Dkt. No. 2).[2] In

---

[1] Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order is effective for not more than fourteen days from the date of the order, unless, before its expiration, "the court, for good, cause extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. P. 65(b)(2); *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689 (3d Cir. 1997) (noting that "the most prevalent view" is that a temporary restraining order issued with notice is subject to the same standards in Rule 65 for one issued without notice).

[2] In their Motion, Plaintiffs also requested a preliminary injunction. As discussed at the hearing

2

response to this Court's Order, Defendants filed their Opposition on June 2, 2014 (Dkt. No. 11), and the Court held a hearing on Plaintiffs' Motion on June 3, 2014 ("TRO hearing").

**B.    Factual Background**

Plaintiffs Coffelt and Canegata seek to run as Independent candidates on a joint ticket for governor and lieutenant governor of the Virgin Islands, respectively, in the November 4, 2014 general election. Plaintiff Coffelt is not a registered member of a political party. (Dkt. No. 1 at ¶ 1; Dkt. No. 12-1 at 8). Plaintiff Canegata is a registered member of the Republican party. (Dkt. No. 1 at ¶ 2; Dkt. No. 12-2 at 6).[3]

On May 23, 2014, Coffelt filed, through a representative, nomination papers[4] with the Office of Supervisor of Elections seeking to run for governor with Canegata as her running mate. (Dkt. No. 12-1; Dkt. No. 1 at ¶ 13; Dkt. No. 11 at 2). On May 27, 2014, Canegata filed his nomination papers to run as lieutenant governor on the same ticket as Coffelt. (Dkt. No. 12-2; Dkt. No. 1 at ¶¶ 13–17).[5] Plaintiff Charles is one of the individuals who signed Plaintiff

---

held on June 3, 2014, the Court is currently adjudicating only Plaintiffs' request for a temporary restraining order. By agreement of the parties at the hearing, the next stage of briefing will proceed directly to the adjudication of the merits of a permanent injunction in this matter.

[3] The Republican party is not holding a 2014 primary election for the gubernatorial race, nor will there otherwise be a Republican party-sponsored ticket in that race. There will, however, be a 2014 Republican primary for the election of party officers, in which Plaintiff Canegata—the current Chair of the Republican party, *see* http://www.vivote.gov/content/Office-Supervisor-Testimonies (last visited June 6, 2014)—is running for re-election. (Dkt. No. 1 at ¶ 24).

[4] Throughout their Complaint and Motion, Plaintiffs refer to the documents which Coffelt and Canegata filed as "nomination petitions." However, under the Virgin Islands Code, the term "nomination petitions" refers to the documents filed by a candidate seeking to run in a political party's primary, and the term "nomination papers" refers to the documents filed by a candidate seeking to run outside of the political party process. *See* 18 V.I.C. §§ 344, 381–84. Accordingly, for clarity and accuracy, the Court will refer to the documents which Plaintiffs filed with the Office of Supervisor of Elections as "nomination papers."

[5] The Complaint alleges that Canegata attempted to file his nomination papers "prior to the noon deadline" on May 23, 2014, but was not permitted to do so by the Office of the Supervisor of

Canegata's nomination papers as a qualified elector. (Dkt. No. 12-2 at 2).

On May 27, 2014, Plaintiffs Coffelt and Canegata each received a "Notice of Defect" from Supervisor Fawkes.[6] The Notice of Defect addressed to Coffelt states, in pertinent part:

> PURSUANT TO TITLE 18 SECTION 411 YOU ARE HEREBY NOTIFIED THAT YOUR NOMINATION PETITION/PAPER WAS FOUND TO BE DEFECTIVE. THE REASON FOR THE DEFECT:
>
> **PURSUANT TO VIC TITLE 18, CHAPTER 17 § 342a – Prohibition against persons registered to a political party running as a no-party or independent candidate.**
>
> **THE REQUIRED RUNNING MATE MUST BE OF LIKE INDEPENDENT PARTY IN ORDER TO BE AN ELIGIBLE CANDIDATE FOR GOVERNOR – VIC 18 SECTION 342(A)**.

(Dkt. No. 1-2). The Notice of Defect addressed to Canegata states, in pertinent part:

> PURSUANT TO TITLE 18 SECTION 411 YOU ARE HEREBY NOTIFIED THAT YOUR NOMINATION PETITION/PAPER WAS FOUND TO BE DEFECTIVE. THE REASON FOR THE DEFECT:
>
> **AS A REGISTERED MEMBER OF THE REPUBLICAN PARTY YOU HAVE FILED A NOMINATION PAPER AS A LIEUTENANT GOVERNOR CANDIDATE WITH A NO PARTY CANDIDATE WHICH IS IMPERMISSIBLE UNDER THE LAW**.

(Dkt. No. 1-1).

On May 30, 2014, Plaintiffs filed their Complaint and the instant Motion, challenging Supervisor Fawkes' interpretation of the applicable law as it pertains to Plaintiffs' eligibility to run as Independent candidates on a joint ticket in the 2014 gubernatorial race.

---

Elections. (Dkt. No. 1 at ¶ 13). Plaintiffs assert that Canegata timely filed his nomination papers on May 27, 2014. (*Id.* at ¶¶ 16, 17). Defendants have not disputed this fact.

[6] Plaintiffs allege that Supervisor Fawkes emailed Coffelt the Notice of Defect on May 27, 2014. (Dkt. No. 1 ¶ 19). The Notice of Defect addressed to Coffelt is dated May 23, 2014. (Dkt. No. 1-2).

## II.   APPLICABLE LEGAL PRINCIPLES

Four factors determine whether injunctive relief is appropriate:

(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385–86 (3d Cir. 2012) (internal citation and quotation marks omitted); *see also Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011).

If Plaintiffs are unable to establish that each element is in their favor, an injunction should not issue. *Conestoga Wood Specialties Corp. v. Sec'y of the United States HHS*, 724 F.3d 377, 382 (3d Cir. 2013) (citation omitted). However, "'the grant or denial of [injunctive relief] is almost always based on an abbreviated set of facts, requiring a delicate balancing . . . [that] is the responsibility of the district judge.'" *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117 (3d Cir. 2013) (alteration in original) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102–03 (3d Cir. 1988)).

## III.   DISCUSSION

Plaintiffs request "[a] temporary restraining order preventing Defendant Fawkes from disqualifying them from the 2014 general election." (Dkt. No. 2 at 14). Plaintiffs maintain that they have made the necessary showing on each of the four factors for injunctive relief under Rule 65. The Court agrees. Accordingly, the Court will enter a Temporary Restraining Order.

### A.   Reasonable Probability of Success on the Merits

Plaintiffs contend that there is no statutory basis for the reasons stated in the Notices of Defect for disqualifying Plaintiffs Coffelt and Canegata—namely, that Canegata, as a registered

Republican, is prohibited from running for lieutenant governor "with a No Party candidate," and that Coffelt is prohibited from running for governor with a running mate that is not of "like Independent party." (Dkt. Nos. 1-1; 1-2).[7]

Based on the arguments presented at this stage of the proceedings, and the Court's review of the applicable law, the Court is unconvinced that the plain language of the statutory provisions upon which Defendants rely stand for the propositions that Defendants assert as the bases for disqualifying the Coffelt/Canegata team. Specifically, the Court is not persuaded that the statutory provisions, as written, forbid a registered member of a political party—who is not a political party candidate for public office, and thus not the subject of a nomination petition for such office—from running for such office outside of the primary election process. The Court is also not convinced that the statutory provisions *require* "No Party" candidates running outside of the primary election process to have running mates of "like Independent party[.]" Nor is the Court convinced that the law prohibits a registered member of a party—who is not a political party candidate for public office, and thus for whom no nomination petition for such office has been filed—from running outside of the primary election process as "Independent" with a "No Party" running mate. Accordingly, the Court finds that Plaintiffs have demonstrated a reasonable probability of prevailing on the merits, based on the statutory provisions as written.

---

[7] Plaintiffs further argue that, if the statutory provisions are construed as Defendants contend, the provisions would be unconstitutional. However, because the Court finds that there is a reasonable probability that Plaintiffs will prevail on the merits of their argument regarding the statutory construction of the provisions in question, the Court need not reach the constitutional arguments at this juncture. *See Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) ("'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" (quoting *Spector Motor Service* v. *McLaughlin*, 323 U.S. 101, 105 (1944)) (alteration in original).

1.   **Nomination Petitions and Nomination Papers**

The sections of the Virgin Islands Code which pertain to nominating candidates for elected public office are found primarily in Chapter 17 of Title 18. Subchapter I of Chapter 17 contains sections governing the nomination of candidates through the political party primary election process. Subchapter II of Chapter 17 contains sections governing the nomination of candidates who are not running in party primaries.

These two avenues through which candidates are nominated to run in elections are initiated through the filing of nomination petitions and nomination papers.[8] As noted above, nomination petitions and nomination papers are distinct documents that serve different purposes. *See supra* note 4. Nomination petitions are described in Subchapter I, and nomination papers are described in Subchapter II.

Title 18 V.I.C. § 344, in Subchapter I, describes nomination petitions as the mechanism by which a candidate may be nominated to run for public office in a political party's primary election, with the goal of representing that party in the general election. Nomination petitions are also to be used to nominate a candidate to run for a party office to be filled in the party's primary election. The statutory provision states, in pertinent part:

> The nominations of candidates at the primary election for public offices to be filled at the ensuing general election and for party offices to be filled at the primary election shall be made by nomination petitions for each candidate who files under this subchapter.

18 V.I.C. § 344(b).

Nomination papers are described in the four sections that comprise Subchapter II. For example, section 381 provides, in pertinent part:

---

[8] Different mechanisms are used for replacing a nominated candidate who dies or withdraws. *See* 18 V.I.C. §§ 414, 415.

7

> In addition to the party nominations made at primaries, nomination of candidates for any public office may be made by *nomination papers* signed by qualified electors of this territory or of the election district for which the nomination is made, and filed in the manner provided in this subchapter.

18 V.I.C. § 381(a) (emphasis added).[9] The other sections of Subchapter II describe the requirements for the content and composition of nomination papers, as well as the requirements for the affidavits of candidates nominated through nomination papers. 18 V.I.C. §§ 382–84.

Based on these provisions, it appears to the Court that nomination petitions are used to nominate political party candidates to run for public office at political party primaries, while nomination papers are used by political bodies or groups of electors to nominate candidates to run for public office at the general election. This interpretation is buttressed by other references in the Code to nomination petitions and nomination papers as different documents. *See, e.g.*, 18 V.I.C. § 410(a) ("Nomination petitions filed pursuant to section 344 of this chapter and nomination papers filed pursuant to subchapter II of this chapter must be filed [with the Supervisor of Elections in the appropriate district by established deadlines].").

### 2.     Registered Party Members Running as "Independent"

Defendants rely principally on sections 342 and 342a to argue that a registered member of a party, who is not a political party candidate for public office, and thus was not the subject of a nomination petition for such office, cannot run as an Independent candidate outside of the primary election process. Section 342 provides, in pertinent part:

> [A]ll candidates of political parties, as defined in section 301 of this title, for public offices shall be nominated, and candidates for party offices which, under this title, are required to be elected by the party electors, shall be elected, at

---

[9] Although section 381 provides that the nomination process outside of the political party primary election process is "[i]n addition to the party nominations made at primaries," 18 V.I.C. § 381, the law prohibits the dual filing of nomination documents. *See* 18 V.I.C. § 410(b) ("In any general election year, a person may file either a nomination petition pursuant to section 344 of this chapter or a nomination paper pursuant to subchapter II, but not both.").

      primary elections held in accordance with the provisions of this title and in no other manner.

18 V.I.C. § 342. After quoting section 342 in their Opposition, Defendants state that "[a]s a registered republican, Canegata can only be elected by party electors and must be nominated pursuant to nomination petition as set forth in 18 V.I.C. § 344." (Dkt. No. 11 at 4).

      However, by its plain language, section 342 applies to "candidates of political parties," not registered members of political parties. In this regard, the provision does not say—as Defendants would have it—that any "registered member of a political party" seeking public office "shall be elected . . . at primary elections held in accordance with the provisions of this title and in no other manner." Rather, it speaks to "candidates of political parties." 18 V.I.C. § 342. Accordingly, section 342 should be interpreted—in accordance with its plain language—as applying to candidates of political parties. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute. It is well established that, when the statutory language is plain, we must enforce it according to its terms.") (citations omitted).[10]

      Pursuant to section 344, in order for an individual to become a candidate of a political party for public office, a nomination petition must be filed on his or her behalf. 18 V.I.C. § 344(a) ("The name of no person may be placed on the official primary ballot of a political party as a *candidate* for public or party office unless a petition in accordance with the provisions of this section has been filed in his behalf . . . ."). 18 V.I.C. § 344(a) (emphasis added). Accordingly, because it is uncontroverted that no nomination petition was filed on Plaintiff Canegata's behalf for lieutenant governor, it appears to the Court that he never became a

---

[10] *See also* 18 V.I.C. § 301 ("Any political party in the Virgin Islands . . . shall nominate all its candidates for public office . . . by a vote of the electors enrolled as members of the party at the primary election in accordance with the provisions of this title.").

Republican party candidate for that office under section 342.[11]

Defendants further rely on section 342a, which was referenced in Plaintiff Coffelt's Notice of Defect. (See Dkt. No. 1-2). Section 342a's title, "*Prohibition against persons registered to a political party running as a no-party or independent candidate*," might seem to lend support to Defendants' position. However, pursuant to the Virgin Islands Code, the "descriptive headings or catchlines, other than section numbers contained therein, immediately preceding the text of individual sections of this Code . . . do[] not constitute part of the law." 1 V.I.C. § 44. Accordingly, the Court must look to the text of section 342a to discern the meaning of this provision.

Section 342a provides:

> Any person running for public office must run as a candidate consistent with the political party designation under which the candidate is registered at the time of the filing of the nomination petition, whether the political party designation indicates an affiliation with a political party as defined in section 301 or otherwise.

18 V.I.C. § 342a. After quoting section 342a in their Opposition, Defendants note that "Canegata is a registered republican" and assert that "[h]e cannot run as a no-party, as the nomination papers filed by Coffelt suggest[], while he remains a registered republican." (Dkt. No. 11 at 3).

---

[11] The Court recognizes that in an earlier case, this Court used language in discussing section 342 that could be construed as consistent with Defendants' construction of that statutory provision. *See Golden v. Government of the Virgin Islands*, 2005 U.S. Dist. LEXIS 45967, at *21 (D.V.I. Mar. 1 2005) ("The Virgin Islands statute requiring *candidates with a party affiliation* to be elected only through the primary process, 18 V.I.C. § 342, is rational and compelling for many of the reasons expressed in *Storer*.") (emphasis added); *but cf. id.* at *13 ("Title 18 V.I.C. § 342 (1998) requires that *all candidates of political parties* running for public offices be nominated and elected at primary elections.") (emphasis added). It is noteworthy that the context of *Golden* in which section 342 was discussed was one—unlike here—in which the plaintiff ran for a public office as a candidate in the Democratic primary and lost, and then sought to obtain the office, either as a Democrat or Independent, based on write-in votes secured in the general election. Further, *Golden* did not include an analysis of section 342's statutory language in its general description of that statutory provision. Thus, this Court questions whether *Golden* can be deemed instructive under the circumstances here.

However, while section 342a precludes someone from running for public office as a candidate inconsistent "with the political party designation under which the candidate is registered *at the time of the filing of the nomination petition* . . . ." 18 V.I.C. § 342a (emphasis added), it does not have any preclusive effect on an individual on whose behalf there has been no filing of a nomination petition. Again, it is uncontroverted here that no nomination petition was filed on Plaintiff Canegata's behalf for lieutenant governor.

During the TRO hearing in this matter, the Court repeatedly asked counsel for Defendants to identify the specific language in the applicable statutory provisions that supported their interpretation of the law. Counsel was unable to do so. Instead, Defendants rely on a purported reading of the Elections Code as a whole, their operation in practice, and the deference that is due to an agency's interpretation of a statute it administers under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842–43 (1984). While the Court agrees that deference is due to an agency's interpretation of a statute it administers under the appropriate circumstances, neither the Court's review of the provisions in the Elections Code upon which Defendants rely for their holistic reading, nor the fact that the agency may engage in a particular practice, alters the Court's conclusion that the agency's interpretation of the law is not supported by the plain language of the applicable statutory provisions. *See id.* ("When a court reviews an agency's construction of the statute which it administers, . . . [i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (footnote omitted).

Finally, Defendants rely on the same statutory provisions to support the conclusion that Coffelt and Canegata are ineligible to run as an Independent team outside of the primary election process, with Coffelt as a "No Party" candidate and Canegata as a registered member of the

Republican party.[12] Again, however, the plain language of the provisions upon which Defendants rely simply do not incorporate the restrictions that Defendants suggest.

Based on the foregoing, the Court finds that Plaintiffs have demonstrated a reasonable probability of prevailing on the merits, based on the applicable statutory provisions as written.

**B.     Other Factors for Injunctive Relief**

Having determined that Plaintiffs have demonstrated a reasonable probability of success on the merits, the Court considers the remaining factors for injunctive relief.

First, irreparable harm is a type of harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle County,* 40 F.3d 645, 653 (3d Cir. 1994) (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)). Injuries may constitute irreparable harm when they are difficult to quantify, such as with patent infringements, use of trade secrets, loss of market share, or loss of good will. *See, e.g.*, *Bio-Technology Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1566 (Fed. Cir. 1996) (finding that the loss of revenue, goodwill, and research and development support constituted irreparable harm); *Everett Labs., Inc. v. Breckenridge Pharm., Inc.*, 573 F. Supp. 2d 855, 868 (D.N.J. 2008) ("Thus, Everett must decide between indirectly promoting Multifol Plus or ceasing all promotion and marketing of its own product. The Court agrees that loss of market share is difficult to quantify in this context and thus, constitutes irreparable harm."). The "key" to the analysis is that the harm must be irreparable. *Acierno*, 40 F.3d at 653 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "[I]n order to warrant [injunctive relief], the injury created by a failure to issue the requested injunction must 'be of a peculiar nature, so that compensation in money cannot atone for it . . . .'" (quoting *A. O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976)).

---

[12] Defendants acknowledged that under the applicable law, the Coffelt/Canegata team would be listed on the ballot as Independent candidates. *See* 18 V.I.C. § 492.

Plaintiffs Coffelt and Canegata argued at the TRO hearing that their irreparable harm stems from the specter of disqualification hanging over their candidacy.[13] This, in turn, Plaintiffs assert, leads to practical and immediate impediments to effectively campaigning for the November election. While conceding that there is no law that bars them from campaigning despite their disqualification from the ballot, Plaintiffs argue that, because of their current disqualified status, the viability of their candidacy will be subject to question. They maintain that this will adversely affect their ability to garner public support in furtherance of their campaign, including both voter and financial support.

This argument cannot easily be ignored. The political campaign season is underway and the candidates for the various offices—including several teams in the gubernatorial race—are actively competing against each other for public support. In the case of Plaintiffs Coffelt and Canegata, however, the government official entrusted with the responsibility to determine whether a candidate "meet[s] the qualifications established by law for the office," 18 V.I.C. § 411(b), has determined that defects in their candidacy render Plaintiffs disqualified, and thus ineligible to run for office. The harm that understandably flows from being held out to the public as officially disqualified, including lost opportunities to garner support, is not easily quantifiable, nor is there an adequate remedy at law. The Court views, in this context, that Plaintiffs have made a showing that they would be irreparably harmed if a TRO is not entered.

Second, and in stark contrast, there would be no harm to Defendants, as the non-moving parties, if a temporary restraining order is entered. At the TRO hearing, counsel for Defendants

---

[13] Plaintiffs also make constitutional arguments regarding irreparable harm. However, because the Court did not deem it necessary to reach the constitutional issues on the merits (*see supra* note 7), and therefore did not assess Plaintiffs' likelihood of success on that basis, the Court will not consider Plaintiffs' constitutional arguments regarding irreparable harm. *See Clinton*, 520 U.S. at 690 n.11.

readily conceded that Defendants would suffer no harm.

Finally, with regard to the public interest, the Third Circuit has noted that, "'[i]f a plaintiff demonstrates both a likelihood of success on the merits and an irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.'" *Guardian Life Ins. Co. of Am. v. Estate of Cerniglia*, 446 F. App'x 453, 457 (3d Cir. 2011) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)). This case presents no exception, as the public interest is well served by the opportunity to expand the avenues for open dialogue and expression of ideas, especially in the election context.

In view of the foregoing, the Court finds that the remaining factors also favor the entry of a temporary restraining order under the circumstances here.

### IV. CONCLUSION

For the foregoing reasons, the Court will enter a Temporary Restraining Order enjoining Defendants from disqualifying, pursuant to Title 18 V.I.C. §§ 342 and 342a, the nomination of Soraya Diase Coffelt and John Canegata as candidates for governor and lieutenant governor, respectively, in the November 4, 2014 general election. An appropriate Order accompanies this Memorandum Opinion.

Date: June 6, 2014                                    _____/s/_____
                                                                  WILMA A. LEWIS
                                                                  Chief Judge