DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

SORAYA DIASE COFFELT, JOHN
CANEGATA AND RONALD CHARLES,

    Plaintiffs,

    v.

CAROLINE F. FAWKES, IN HER OFFICIAL
CAPACITY AS SUPERVISOR OF
ELECTIONS FOR THE VIRGIN ISLANDS
AND GOVERNMENT OF THE VIRGIN
ISLANDS,

    Defendants.

Civil Action No. 2014-025

**Attorneys:**
**Andrew C. Simpson, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiffs' "Motion for Injunction Pending Appeal." (Dkt. No. 31). For the reasons that follow, the Court will deny Plaintiffs' Motion.

### I. BACKGROUND

By Complaint filed on May 30, 2014, Plaintiffs sought to permanently enjoin the Office of the Supervisor of Elections ("Supervisor of Elections") from disqualifying the team of Soraya Diase Coffelt, a "No-Party" candidate, and her Republican running mate, John Canegata, from

1

running as Independent/No-Party ("Independent") candidates for governor and lieutenant governor, respectively, in the November 4, 2014 general election. The Complaint was filed by Plaintiffs Coffelt and Canegata, the disqualified candidates, and Plaintiff Ronald Charles, an individual who supported their candidacy.

On May 23 and 27, 2014, nomination papers were filed with the Office of the Supervisor of Elections ("Supervisor of Elections") on behalf of Plaintiffs Coffelt and Canegata, respectively. (Dkt. Nos. 12-1, 12-2). The Supervisor of Elections issued Notices of Defect to the two potential candidates on May 27, 2014, indicating, in essence, that because of Plaintiff Canegata's membership in the Republican party the team could not run as Independent candidates. (Dkt. Nos. 1-1, 1-2). When the defect was not cured within the allotted time, Plaintiffs Cofelt and Canegata were disqualified.[1]

Together with the Complaint, Plaintiffs sought a temporary restraining order ("TRO"), arguing that there was no statutory basis to disqualify them. Alternatively, they argued in their motion that if the relevant statutory provisions were read to require their disqualification, those provisions would violate the Revised Organic Act and the United States Constitution. (Dkt. No. 2). Defendants filed a response on June 2, 2014 (Dkt. No. 11), and a hearing was held on June 3, 2014.

On June 6, 2014, after considering the briefing and the arguments presented at the TRO hearing, the Court granted Plaintiffs' motion and entered a TRO enjoining Defendants from disqualifying—pursuant to two specific statutory provisions—Plaintiffs Coffelt and Canegata as candidates, and rendering Defendants' earlier decision to disqualify them as ineffective. (Dkt.

---

[1] As Plaintiffs alleged in the Complaint, the defect could have been cured by Plaintiff Canegata resigning from the Republican Party, or by Plaintiff Coffelt selecting a "no party" running mate. (Dkt. No. 1 at ¶ 21). However, Plaintiff Canegata was "unwilling" to disaffiliate from the Republican party because he is a candidate for re-election as Chair of the Party. (*Id.* at ¶¶ 23–24). In addition, Plaintiff Coffelt did not desire to select another running mate. (*Id.* at ¶ 22).

Nos. 16, 17). In conjunction with the entry of the TRO, and as agreed at the hearing on June 3, 2014, the Court set a briefing schedule for Plaintiffs' motion for permanent injunctive relief and scheduled a hearing on the motion for June 27, 2014. (Dkt. No. 18).[2]

After considering the briefing and the arguments presented at the permanent injunction hearing, the Court denied Plaintiffs' motion for permanent injunctive relief and entered Judgment for Defendants. (Dkt. Nos. 28, 29). Plaintiffs then filed a "Notice of Appeal" (Dkt. No. 30), and the instant Motion, requesting an injunction pending appeal (Dkt. No. 31).

## II.  APPLICABLE LEGAL PRINCIPLES

"[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialties Corp. v. Sec'y of HHS*, 2013 U.S. App. LEXIS 2706, at *2–3 (3d Cir. Feb. 7, 2013). Courts consider four factors when ruling on a request for a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385–86 (3d Cir. 2012) (internal citation and quotation marks omitted).

In considering a motion for a stay pending appeal, where the district court had denied the moving party's motion for a preliminary injunction, the Third Circuit noted that "[s]uch stays are rarely granted, because in our Court the bar is set particularly high." *Conestoga Wood*, 2013 U.S.

---

[2] The Court subsequently extended the TRO twice—once *sua sponte*, and once with the consent of the parties—to allow sufficient time for full briefing and oral argument on the motion for a permanent injunction and a ruling by the Court. (Dkt. Nos. 22, 27).

App. LEXIS 2706, at *3.[3] To warrant such a stay in the Third Circuit, the moving party must establish all four factors considered for preliminary injunctive relief. *Id.* at *4 (citing *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999)). A moving party's failure to establish likelihood of success on the merits is fatal to a stay pending appeal in these circumstances. *Id.* at *9. The Third Circuit does not "relax [this] standard depending on the nature of the right asserted." *Id.*

### III.  DISCUSSION

Plaintiffs contend that, under the circumstances presented here—specifically, "an initial opinion agreeing that the Plaintiffs are likely to prevail, coupled with a subsequent order that relies upon an administrative interpretation of the law that had never been articulated by the administrative agency until the May 27, 2014 disqualification of the Plaintiffs"—they have "presented legal arguments that indicate a likelihood of success on the merits on appeal." (Dkt. No. 31 at 3). The Court finds that these arguments fail—both individually and collectively—to demonstrate a reasonable probability of success on the merits of the appeal. Accordingly, the Court will deny Plaintiffs' Motion.[4]

With regard to the first argument, Plaintiffs claim that because the Court found at the TRO stage of the proceedings that Plaintiffs had a reasonable probability of success on the merits, this Court should now find that Plaintiffs have a reasonable probability of success on the merits on appeal. However, such an argument completely ignores the intervening proceedings on Plaintiffs' motion for a permanent injunction, including the 54 pages of briefing and the

---

[3] The status of this case presents an even more compelling situation for a high bar, given that, in ruling on Plaintiffs' motion for permanent injunctive relief, the entirety of the merits of the matter have been fully briefed, argued, considered, and ruled on by the Court.

[4] Because the Court finds that Plaintiffs have failed to establish a reasonable probability of success on the merits on appeal, the Court will not address the remaining three factors.

additional 4 hours of oral argument, culminating in the Court's finding, in its 41-page Memorandum Opinion denying Plaintiffs' motion for permanent injunctive relief, that Plaintiffs had in fact *failed* to succeed on the merits of their claims.[5]

In keeping with the nature of motions for temporary injunctive relief, the Court undertook an expedited review of Plaintiffs' motion. "Based on the arguments presented at [that] stage of the proceedings and the Court's review of the applicable law," the Court found, in essence, that the plain language of the relevant statutory provisions did not explicitly prohibit registered and enrolled members of political parties from running for public office in the general election as Independent candidates. (*See* Dkt. No. 17). With this finding, the Court concluded that Plaintiffs had a reasonable probability of success on the merits. (*Id.* at 12). Because the Court found that Plaintiffs had also demonstrated the other factors necessary for the entry of a TRO, the Court entered an Order enjoining Defendants from disqualifying Plaintiffs pursuant to two specific statutory provisions, and rendering the disqualification decision ineffective for such time as the TRO remained in place. (Dkt. No. 16).

However, the proceedings did not end there. The TRO stage of the proceedings was followed by a more comprehensive stage, in which—by agreement of the parties—the parties briefed and argued, and the Court considered and ruled on the ultimate merits of the case in response to Plaintiffs' motion for a *permanent* injunction. Thus, with the benefit of full briefing, a second hearing in this matter, and a more in-depth analysis, the Court evaluated the case anew and found that, while the plain language of the relevant statutory provisions did not *prohibit* registered and enrolled members of political parties from running for public office in the general

---

[5] Further, the Court notes that, "in the context of TROs and preliminary injunctions," a finding of a reasonable probability of success does not mean that a plaintiff is "more likely than not" to ultimately prevail on the merits. *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) ("[A] court's finding of reasonable probability of success on the merits is not a resolution of any merit-based issue.") (internal citation and quotation marks omitted).

election as Independent candidates, it also did not *permit* them to do so. (Dkt. No. 29 at 12–17). Accordingly, the Court found that the relevant provisions were "silent or ambiguous" with respect to the precise question at issue and, applying well-established legal principles, undertook to determine what level of deference, if any, the Court should afford to the Supervisor of Elections' interpretation of the relevant statutory provisions. (*Id.* at 17–22). Ultimately, the Court concluded that the Supervisor of Elections' interpretation was both reasonable and persuasive, and warranted respect. (*Id.* at 23–26). Further, the Court found that the disaffiliation requirement at issue did not violate either the Revised Organic Act or the United States Constitution. (*Id.* at 27–40).

In view of the foregoing, the Court concluded that Plaintiffs had failed to succeed on the merits of their claims, denied Plaintiffs' motion for a permanent injunction, and entered judgment for Defendants. Plaintiffs' contention—that the Court's *ultimate conclusion* on Plaintiffs' motion for a *permanent injunction* that Plaintiffs had *failed to succeed on the merits* of their claims should be ignored at this stage of the proceedings, because of the Court's initial determination in the context of their motion for a *temporary restraining order* that Plaintiffs had a *reasonable probability* of succeeding on the merits—must be rejected. *See Singer*, 650 F.3d at 229 ("[A] court's finding of reasonable probability of success on the merits is not a resolution of any merit-based issue.") (internal citation and quotation marks omitted).

Plaintiffs' second ground for arguing that they have "presented legal arguments that indicate a likelihood of success on the merits on appeal," is that the Court's "order [denying the motion for permanent injunctive relief] . . . relie[d] upon an administrative interpretation of the law that had never been articulated by the administrative agency until the May 27, 2014 disqualification of the Plaintiffs." (Dkt. No. 31 at 3). Plaintiffs cite no legal authority for this proposition. Nor is there any factual basis in the record for such an argument. Indeed, from what

the Court can discern from Plaintiffs' cryptic one-sentence reference in their Motion, this is the first time that Paintiffs are asserting this argument in these proceedings.[6] In any event, in the context here, such an argument would not change the Court's ruling.

Plaintiffs' arguments, which fail individually, are made no stronger when coupled together. Accordingly, for the reasons stated herein, and for the reasons stated in the Court's Memorandum Opinion denying Plaintiffs' motion for permanent injunctive relief, the Court finds that Plaintiffs' arguments fail—both individually and collectively—to demonstrate a reasonable probability of success on the merits on appeal.

### IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' "Motion for Injunction Pending Appeal." An appropriate Order accompanies this Memorandum Opinion.

Date: July 12, 2014                    _____/s/_____
                                       WILMA A. LEWIS
                                       Chief Judge

---

[6] Notwithstanding discussion on the issue of deference to the agency—both orally and in writing—Plaintiffs never argued that deference to the agency would be inappropriate because the agency had allegedly relied on an administrative interpretation never before articulated until the disqualification of Plaintiffs. Plaintiffs did assert that "in Virgin Islands history, Governor Juan F. Luis, a member of the Independent Citizen's Movement party ran and was elected with his running mate, Democrat, Henry Millin." (Dkt. No. 2 at 7). The Court addressed this argument in its Memorandum Opinion denying Plaintiffs' motion for permanent injunctive relief by noting that, although the Luis/Millin candidacy was discussed at the hearing on June 3, 2014, "there was no resolution with regard to their respective party registration during their candidacy." (Dkt. No. 27 at n.18). Further, the Court stated that "even assuming that Juan Luis and Henry Millin were registered members of political parties when they ran for office as Independents in 1978, this ostensibly inconsistent application of the requirement at issue over thirty-five years ago, and prior to more recent amendments to the Elections Code, *see, e.g.*, 18 V.I.C. § 342a, would not change the Court's conclusion, discussed above, that the Supervisor of Elections' interpretation of Title 18 is reasonable and persuasive." (*Id.*).