## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **SORAYA DIASE COFFELT, JOHN CANEGATA AND RONALD CHARLES,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 2014-0025** |
| **CAROLINE F. FAWKES, IN HER OFFICAL CAPACITY AS SUPERVISOR OF ELECTIONS FOR THE VIRGIN ISLANDS AND GOVERNMENT OF THE VIRGIN ISLANDS,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**Attorneys:**
**Andrew C. Simpson, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiffs*

**Carol Thomas-Jacobs, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Plaintiffs Soraya Diase Coffelt, John Canegata, and Ronald Charles' "Motion for Award of Attorneys' Fees" and accompanying briefing (Dkt. Nos. 42-43); Defendants Caroline F. Fawkes and Government of the Virgin Islands' Response (Dkt. No. 47); and Plaintiffs' Reply (Dkt. No. 48). Plaintiffs seek $52,175 in attorneys' fees as prevailing parties under 42 U.S.C. § 1988 ("Section 1988") and 5 V.I.C. § 541 ("Section 541"), as well as $2,805.72 in costs, pursuant to Section 1988 and 28 U.S.C. § 1920 ("Section 1920").

For the reasons that follow, the Court will award Plaintiff $52,175 in attorneys' fees and $2,405.72 in costs, for a total award of $54,580.72.

## I.   BACKGROUND

In May 2014, Plaintiffs Coffelt and Canegata each filed nomination papers with the Virgin Islands Office of the Supervisor of Elections, seeking to run on a joint ticket in the 2014 general election as independent candidates for governor and lieutenant governor, respectively. Later that month, Defendant Fawkes, the Supervisor of Elections for the Virgin Islands, notified Coffelt and Canegata that their nomination papers were defective because Coffelt was a registered Republican and Fawkes had determined that 8 V.I.C. § 342a ("Section 342a") prohibited registered members of political parties and their running mates from running for public office in the general election as independent candidates.

Plaintiffs filed suit soon after, seeking, among other things, to enjoin Defendants from disqualifying Coffelt and Canegata from the ballot, as well as a declaration under the remedial provisions of 42 U.S.C. § 1983 ("Section 1983") that Fawkes' interpretation of Section 342a violated Plaintiffs' rights as guaranteed by the United States Constitution and the Revised Organic Act of the Virgin Islands of 1954, 48 U.S.C. § 1561, *as amended*. This Court initially entered a temporary restraining order ("TRO") at Plaintiffs' request (Dkt. No. 10), but later denied Plaintiffs' motion for a permanent injunction, holding—in issues of first impression—that Section 342a was ambiguous, that Fawkes' interpretation of Section 342a passed muster when accorded the appropriate deference, and that Section 342a was neither unconstitutional as applied nor conflicted with the Revised Organic Act. (Dkt. Nos. 28 and 29).

Plaintiffs then appealed this Court's decision to the Court of Appeals for the Third Circuit, which held that Section 342a, by its plain language, did not bar Plaintiffs' candidacy. *See Coffelt*

*v. Fawkes*, 765 F.3d 197, 204 (3d Cir. 2014). Because the Third Circuit resolved Plaintiffs' claims on these grounds, it did not reach Plaintiffs' arguments that Section 342a was unconstitutional or violated the Revised Organic Act. *See id*. at 204 n.10. After the Third Circuit reversed, this Court entered judgment for Plaintiffs, permanently enjoining Defendants from disqualifying the nomination of Plaintiffs Coffelt and Canegata under Section 342a. (Dkt. No. 41).

Thereafter, Plaintiffs filed the instant fee petition, seeking reimbursement for $52,175 in attorneys' fees as prevailing parties under Section 1988 and Section 541, along with $2,805.72 in costs. (Dkt. Nos. 42 and 43). In response, Defendants argue that Plaintiffs have not shown they are entitled to fees under Section 1988; that the Court should exercise its discretion to deny or reduce fees under either Section 1988 or Section 541; and that Plaintiffs' requested fees are unreasonable. (Dkt No. 47).

As detailed below, the Court finds that Section 1988 authorizes recovery of Plaintiffs' attorneys' fees; that Plaintiffs' requested fees are reasonable; and that Plaintiffs are entitled to nearly all their costs under Rule 39 of the Federal Rules of Appellate Procedure and Rule 54 of the Federal Rules of Civil Procedure.

Accordingly, the Court will award Plaintiffs $52,175 in attorneys' fees and $2,405.72 in costs, for a total award of $54,580.72.

## II.   APPLICABLE LEGAL PRINCIPLES

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless of whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011). Exceptions exist where fee-shifting is authorized by statute, such as in the case of Section 1988, which authorizes a prevailing party to recover its reasonable attorneys' fees once it prevails

in an action brought to enforce an enumerated list of federal statutes, including Section 1983. *Id.* at 832-83.

The prevailing party bears the burden of establishing that Section 1988 authorizes the award. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). This requires, in the first instance, that the party establish both that it is a prevailing party and that the claims upon which it prevailed are eligible for fee-shifting. *Id.* To be considered a prevailing party, "a plaintiff must obtain either an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement, and whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." *Ward v. Phila. Parking Auth.*, 634 F. App'x 901, 903 (3d Cir. 2015) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (cleaned up)).

Once a prevailing party crosses this initial threshold, it then bears the burden of establishing that the attorneys' fees requested are reasonable. *Rode*, 892 F.2d at 1183. The district court evaluates reasonableness using the familiar lodestar method: multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To show that its attorneys' hourly rates are reasonable, the prevailing party must satisfy the district court that the rates accord with those prevailing in the relevant legal community for lawyers of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Likewise, the prevailing party must document the number of hours its attorneys expended on the matter "with sufficient specificity to allow the district court to determine whether the hours claimed are unreasonable for the work performed." *Evans v. Port Auth. of New York and New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (citation omitted).

The adverse party, in turn, may dispute the lodestar calculation by "clearly setting forth both the type of work being challenged and its grounds for contending that the hours are unreasonable." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989). The burden remains on the prevailing party to demonstrate that its fees are reasonable, and the district court serves a "positive and affirmative function in the fee-fixing process," *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).

The resulting lodestar calculation is "presumed to be the reasonable fee." *Rode*, 892 F.2d at 1183. Even so, the district court may adjust the lodestar at its discretion. *Id.* In exercising this discretion, the district court may consider various factors, including without limitation "the time and labor required, the novelty and difficulty of the questions involved, [and] the skill requisite properly to conduct the case." *Rodriguez v. Spartan Concrete Products, LLC*, No. 12-CV-00029, 2019 WL 1306259, at *3 (D.V.I. March 22, 2019). The Supreme Court has advised that "[w]here a Plaintiff has obtained excellent results, his attorney should [generally] recover a compensatory fee." *Hensley,* 461 U.S. at 433.

### III.   DISCUSSION

### A.  Authorization to Recover Attorneys' Fees Under Section 1988

Defendants argue that Section 1988 does not authorize Plaintiffs to recover their attorneys' fees and costs because Plaintiffs' lawsuit "was decided in their favor under local law and, therefore, any award of fees should be considered under [Section 541]." (Dkt. No. 47 at 3). The Court disagrees.

It is well-settled that a prevailing plaintiff may recover attorneys' fees under Section 1988 where "the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim." *Maher v. Gagne*, 448 U.S. 122, 133 n.15 (1980). Three conditions must

obtain for the plaintiff to do so. First, the plaintiff's fee-generating claim must be "substantial." *Id.* (citing *Hagans v. Lavine*, 415 U.S. 528 (1974)); *see also Jama v. Esmor Corr. Servs., Inc.*, 577 F.3d 169, 179 (3d Cir. 2009) (adopting the substantiality test and applying *Maher* to pendent state-law claim). Second, the plaintiff's fee-generating and non-fee-generating claims must arise from a "common nucleus of operative fact." *Maher v. Gagne*, 448 U.S. at 133 n.15 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 275 (1966)). Third, the plaintiff must have "prevailed on both the federal and pendent claims *or the federal claim was not adjudicated.*" *Luria Bros. & Co., Inc. v. Allen*, 672 F.2d 347, 357 (3rd Cir. 1982) (emphasis added).[1]

Implicit in the Court's ruling on Plaintiff's application for a TRO is evidence that the first two conditions are met. (*See* Dkt. No. 16 (entering TRO)). In ruling on Plaintiff's application for a TRO, the Court necessarily determined that Plaintiffs' fee-generating (Section 1983) claims could support the Court's exercise of supplemental jurisdiction over Plaintiffs' local claims, from which it follows both that Plaintiffs' 1983 claims were substantial and that they shared a nucleus with Plaintiffs' local claims. *See Fross v. Cnty. of Allegheny*, 848 F. Supp. 547, 552 (W.D. Pa. 2012) ("[W]here a fee generating claim is sufficiently meritorious to confer jurisdiction on the

---

[1] Defendants contend that the Supreme Court's decision in *National Private Truck Council v. Oklahoma Tax Commissioner* prohibits any award of fees on a non-fee-generating claim "unless the plaintiff wins one or more claims that are covered by Section 1988." (Dkt. No. 47 at 5) (citing 515 U.S. 582 (1995)). However, *Truck Council* only precludes fees where no relief can be awarded on the fee-generating claim, *e.g.,* where judgment has previously been entered *against* the plaintiff on its fee-generating claim. 515 U.S. at 592. This holding comports with the logic of *Maher*. There, the Supreme Court expressed concern that plaintiffs would be unfairly deprived of fees when courts rule in their favor on their non-fee-generating claims while leaving their fee-generating claims unaddressed in accordance with the doctrine of constitutional avoidance. 448 U.S. at 133. But concerns that the doctrine of constitutional avoidance might unfairly disadvantage plaintiffs' fee petitions are absent where—as in *Truck Council*—a court has already addressed the constitutional questions at issue by ruling *against* a plaintiff on his fee-generating claim. As explained below, Plaintiffs' fee-generating claims remain unadjudicated here—meaning that *Maher* and *Luria Brothers* control, not *Truck Council*.

district court, and in turn support the exercise of the court's jurisdiction over related state law claims, the substantiality test has been met.") (citing *Hagans*, 415 U.S. at 536-37 and *Seaway Drive-in, Inc. v. Township of Clay*, 791 F.2d 447, 452 (6th Cir. 1986)); *see also United Mine Workers*, 383 U.S. at 725 (observing that "state and federal claims must derive from a common nucleus of operative fact" for a federal court to exercise supplemental jurisdiction over state-law claims).

The third condition is also met. While this Court ultimately rejected Plaintiffs' Section 1983 claims (Dkt. No. 28), the Third Circuit vacated that order, *Coffelt*, 565 F.3d at 199. Because the Third Circuit did not itself rule on Plaintiffs' Section 1983 claims, *id.* at 204 n.10, this Court's Order granting Plaintiffs a permanent injunction was similarly silent on those claims (Dkt. No. 41). Plaintiffs' fee-generating claims therefore remain unadjudicated.

In view of the foregoing, the Court concludes that Section 1988 authorizes Plaintiffs to recover their attorneys' fees.

**B.  Reasonableness of Attorneys' Fees**

Having concluded that Plaintiffs' attorneys' fees are eligible for fee-shifting under Section 1988, the Court must next resolve the issue of the appropriate award. In making this determination, the Court begins by calculating the lodestar.

**1.  Reasonableness of Hourly Rates**

Plaintiffs ask the Court to approve hourly rates of $350/hour for Andrew C. Simpson, Esq., who represented Plaintiffs in both the district court and on appeal; $300/hour for Emily Shoup, Esq., Attorney Simpson's associate; $150/hour for Pamela Cox, Attorney Simpson's paralegal; and $200/hour for Dolace McLean, Esq., who assisted with Plaintiffs' appeal. (Dkt. No. 43 at 9). In support of these requests, Plaintiffs have submitted declarations from Attorneys Simpson and

McLean, as well as billing records for both Attorney Simpson and his firm and Attorney McLean. (Dkt. No. 43-1 at 1-4 (Simpson Dec.); *id.* at 5-6 (billing records); Dkt. No. 43-2 at 1-2 (McLean Dec.); *id.* at 3-4 (billing records)).

As the relevant market rate is the rate "at the time of the fee petition, not the rate at the time the services were performed," *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) (citation omitted), the Court considers cases near to the date the instant petition was filed in 2014. In the relevant time frame, "Virgin Islands courts . . . generally concluded that a reasonable hourly rate in the jurisdiction spans from $125 to $300 per hour." *Anthony of Behalf of Lewis v. Abbott*, No. 99-CV-00078, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (collecting cases); *Bank of Nova Scotia v. Brooks*, No. 14-CV-00062, 2017 WL 987449, at *4 (D.V.I. Mar. 14, 2017) (same) (collecting cases). However, under certain circumstances, courts awarded rates exceeding these figures, including for experienced counsel litigating complex cases. *See, e.g., Equivest St. Thomas v. Gov't of the Virgin Islands,* No. 01-CV-00155, 2004 WL 3037953, at *8 (D.V.I. Dec. 31, 2004) (concluding that rate of $403.75/hour was reasonable rate for senior partner and noting that rate was justified by the expertise of the attorney and "unusual complexity of the litigation"); *Chapa v. Sepe*, No. 12-CV-00505, 2013 WL 8609242, at *2 (V.I. Super. June 3, 2013) (concluding that rate of $395/hour is "at the high end of the customary and prevailing market rates" charged by experienced attorneys in the Virgin Islands); *Interocean Ins. Agency v. Joseph*, No. 06-CV-00177, 2014 V.I. LEXIS 73, at *10 (Super. Ct. Sept. 12, 2014) (concluding that rate of $350/hour was reasonable for experienced attorney).

As the Court has noted, this case presented issues of first impression involving complex issues of law, including, without limitation, the interpretation of Section 342a and whether Defendant Fawkes' interpretation of that section amounted to an impermissible political test such

as to violate Plaintiffs rights as guaranteed by the First and Fourteenth Amendments. (*See generally* Dkt. No. 29). Moreover, when the instant petition was filed, Attorney Simpson had practiced law for 26 years, Attorney Shoup for fifteen years, and Attorney McLean for nine years. (Dkt. No. 43-1 (Simpson Dec.) at ¶¶ 1, 9; Dkt. No. 43-2 (McLean Dec.) at ¶ 3; *see also id.* at ¶ 4 (representing that the focus of Attorney McLean's practice is appellate litigation and that she has briefed and argued "numerous" appeals to the Third Circuit, the Virgin Islands Supreme Court, and the Appellate Division of the District Court of the Virgin Islands).

Also of note is the representation by Plaintiffs' counsel that both Attorneys Simpson and McLean reduced their usual billing rate: from $400/hour to $350/hour, and $400/hour to $200/hour, respectively. (*See* Dkt. No. 43-1 (Simpson Dec.) at ¶ 5 (representing that Attorney Simpson would ordinarily charge $400/hour "on a complex and unique case such as this one" but discounted his rate to $350/hour as a professional courtesy to a fellow member of the Virgin Islands bar, Plaintiff Coffelt); Dkt. No. 43-2 (McLean Dec.) at ¶¶ 6, 8-9, 11 (representing that Attorney McLean charged a flat-fee of $4000 based on an original estimation that she would expend ten hours of work on the matter at her "usual" hourly rate of $400/hour, but that she ultimately "spent double the time planned" and "ended up delivering services at half [her] usual hourly rate"); *see also Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) (observing that "the value of an attorney's time generally is reflected in his normal billing rate")).

In view of the foregoing, the Court finds that Plaintiffs have met their burden of establishing that the hourly rate of $350/hour charged by Attorney Simpson, the hourly rate of $300/hour charged by Attorney Shoup, and the hourly rate of $200/hour charged by Attorney

McLean were reasonable for lawyers of equivalent experience taking on work of comparable complexity. The issue of Pamela Cox's $150/hour rate is moderately more complicated.

With regard to Pamela' Cox's paralegal fees, such fees are available under Section 1988. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). However, whether paralegal fees are compensable under local law has been the source of conflicting opinions. *See, e.g., MRL Dev., LLC v. Whitecap Inv. Corp.*, No. 13-CV-00048, 2017 WL 4863902, at *4, *4 n.12 (D.V.I. Mar. 23, 2017) (cataloguing conflicting authority). As a result, "case law is unclear as to a reasonable hourly rate for both paralegal and assistant services." *Id.* at *4. The existing authority suggests, however, that rates up to $150/hour had been awarded for such services as of 2014, and thereafter. *See, e.g., LPP Mortg., Ltd. v. Ferris*, No. 11-CV-00094, 2014 WL 2459802, at *8, *8 n.3 (D.V.I. June 2, 2014) (approving paralegal rates ranging from $120/hour to $150/hour in 2014); *Int'l Leasing & Rental Corp.*, No. 08-CV-00040, 2010 WL 1284464, at *2 (approving paralegal rate of $125/hour in 2010); *MRL Dev. LLC,* 2017 WL 4863902, at *4 (approving paralegal rates ranging from $70/hour to $150/hour in 2017).

Considering this authority, that Pamela Cox has over 30 years of experience as a paralegal (Dkt. No.43-1 at 2), and that Defendants do not contest Pamela Cox's paralegal rates, the Court finds that Plaintiffs have met their burden of establishing that the hourly rate of $150/hour charged for the paralegal services rendered by Pamela Cox was reasonable.

### 2.   Reasonableness of Time Expended

At the rates specified above, Plaintiffs seek reimbursement for 132.2 hours of work completed by Attorney Simpson, 20.0 hours of work completed by Attorney McLean, 4.8 hours of work completed by Attorney Shoup, and 3.1 hours of work completed by Pamela Cox. (Dkt. No. 43-1 at 5-6; Dkt. No. 43-2 at 3-4). Plaintiffs argue that these 160.1 total hours were necessitated

by the complexity of the case and the expedited nature of their appeal, and urge the Court to view these hours cognizant of the "exceptional result" they achieved. (Dkt. No. 43 at 5-7).

Defendants make five arguments in response. The Court considers each in turn.

First, Defendants argue that the Court should not award any fees, or significantly trim any fees that it awards, because Attorney Simpson's and Attorney McLean's billing records "lump" entries, making it "difficult, if not impossible, to decipher what amount of time was spent on a particular category of tasks." (Dkt. No. 47 at 11-12). This argument is unpersuasive under the circumstances here.

Attorney Simpson's billing records clearly delineate the tasks upon which he worked and the time he devoted to each task. (Dkt. No. 43-1 at 5-6). Attorney McLean's billing records also clearly segregate the tasks she performed by topic (*e.g.,* "Statute Review" and "Motion for Injunctive Relief"), permitting the Court to assess the reasonableness of both the tasks she performed and the total amount of time that she devoted to each of these topics. (Dkt. No. 43-2 at 3-4; *Thompson v. Fla. Wood Treaters, Inc.*, No. 06-CV-00224, 2012 WL 5374175, at *3 (D.V.I. Nov. 1, 2012) (noting that "lumping of activities . . . is disfavored" and that, "[t]o the extent that the Court considers the time associated with a lumped entry to exceed the time reasonable for the completion of those various tasks, the Court will reduce the fees associated with such entries."); *cf. Lempert v. Singer*, 29 V.I. 169, 173 (D.V.I. Dec. 30, 1993) (refusing to reimburse attorneys' fees where application "contain[ed] overly general entries . . . that [did] not indicate the purpose for which the attorneys engaged in such activity and which [] stymied the court's review.")). The Court finds that Attorney Simpson's and Attorney McLean's billing records do not impermissibly lump entries so as to stymie the Court's review. Therefore, the Court will not reduce the award on these grounds.

11

Second, Defendants argue that Attorney Simpson dedicated unnecessary hours to drafting Plaintiffs' complaint and motion for a TRO, Plaintiffs' motion for a permanent injunction, and Plaintiffs-Appellants' letter brief on appeal. (Dkt. No. 47 at 8-9). Defendants take particular issue with the motion for a permanent injunction and letter brief, arguing that the issues raised therein had previously been "raised and briefed" and Plaintiffs' attorneys' billing records reflect "no corresponding decrease." *Id.*

Contrary to Defendants' contentions, the Court finds that the 46.5 hours[2] Attorney Simpson dedicated to drafting these documents were reasonably expended in view of several factors. As a preliminary matter, the issues involved here were novel and complex, which Defendants acknowledge. (Dkt. No. 47 at 13). Moreover, the 19.4 hours Plaintiffs' counsel expended on the motion for a permanent injunction appear to the Court to adequately account for the fact that the issues had previously been partially briefed, especially considering that Defendants raised at least one new argument in their own papers. (*See* Dkt. No. 23 at 11 (arguing, for the first time, that 18 V.I.C. § 410 prohibited Plaintiff Canegata from filing both a nomination petition for the party chair office and a nomination paper for lieutenant governor)). Finally, with regard to the appellate letter brief, the Court agrees with Plaintiffs that the Third Circuit's request for additional briefing signified that it considered the issue to be "an important one, worthy of a full analysis," for which the 5.5. hours Attorney Simpson dedicated were clearly warranted. (Dkt. No. 48 at 6). Thus, Defendants' arguments to the contrary will be rejected.

---

[2] Attorney Simpson expended 21.6 hours to prepare the complaint and motion for a TRO; 12.7 hours on principal briefing and 6.7 hours on the reply briefing for the motion for a permanent injunction; and 5.5. hours on the letter brief for appeal, which followed an order from the Third Circuit instructing the parties to submit further briefing on a specific issue. (Dkt. No. 43-1 at 5-6).

Third, Defendants argue that Plaintiffs' attorneys extensively duplicated one another's written work. (Dkt. No. 47 at 8-10). Defendants point to four such instances. First, Defendants highlight that Attorney Simpson billed 6.5 hours for simply revising a memorandum filed in support of Plaintiffs' motion for a TRO that was originally drafted by Plaintiff Coffelt, "who is a former judge and experienced attorney." *Id.* at 8. The Court finds that Defendants' characterization of Attorney Simpson as merely revising his client's work is without any foundation.[3] Moreover, the Court does not accept Defendants' unsupported premise that an attorney's work may be duplicative of his client's—which, after all, is not billed. Second, Defendants highlight that "non-complicated motions to stay were reviewed and edited by all three attorneys." *Id.* at 9. This contention is without any basis in the record.[4] Third, Defendants highlight that the 35.8[5] hours Attorney Simpson billed to Plaintiffs-Appellants' principal brief was redundant of Attorney McLean's work. *Id.* at 8, 10. Between them, however, Attorneys Simpson and McLean dedicated only 42.8 hours to their principal appellate brief. The Court finds this to be an appropriate collaboration between Attorney Simpson and Attorney McLean, who specializes in appellate work. Finally, Defendants highlight that "duplication appears in the entries dated 7/16/2014 by Emily Shoup and . . . 7/17/2014 by Pam Cox. Both Shoup and Cox appear[] to be billing for the

---

[3] Defendants' argument to this effect is based on Attorney Simpson's July 10, 2014 time entry, which reads: "Continue drafting brief. Extended telephone conference with client and Dolace McLean regarding coordinating drafting between Atty McLean and myself; issues on appeal; and legislative research she will do. Review edits to motion for injunction on appeal; revise same." (Dkt. No. 43-1 at 5). The Court does not believe this entry can be fairly characterized as Attorney Simpson merely "revising the memorandum drafted by his client[.]" (Dkt. No. 40 at 8).

[4] In support of this argument, Defendants cite to three time entries by Attorney Simpson and one time entry by Attorney McLean. *Id.* None of these four entries reflect that Attorney Simpson or Attorney McLean billed for time relating to a motion to stay, nor do they reflect any duplication of time or effort.

[5] Defendants incorrectly state that Attorney Simpson billed 38.8 hours for this brief.

same task." *Id.* at 10. However, this instance of alleged duplication—the only such instance that Defendants specifically identify—is without any basis.[6] The Court accordingly finds that Plaintiffs' attorneys did not impermissibly duplicate work and it will not reduce the award on this basis.

Fourth, Defendants argue that Attorneys Simpson and McLean had multiple unnecessary conferences and communications with Plaintiff Coffelt. (Dkt. No. 47 at 10). Defendants do not specify which entries they contend correspond to these allegedly unnecessary communications, and the Court accepts Plaintiffs explanation that five conferences between Attorney Simpson and Plaintiff Coffelt were appropriate given the length of the case, as well as the need to guarantee Plaintiffs' goals—in particular to ensure Plaintiffs' legal strategy did not interfere with Plaintiff Coffelt's campaign messaging.[7] (*See* Dkt. No. 48 at 7-8). Accordingly, the Court will not reduce the award on this basis.

Fifth, Defendants argue that conferences between Plaintiffs' attorneys are not compensable. (Dkt. No. 47 at 11). While it is true that hours billed by an attorney must not be duplicative of work performed by another, the Third Circuit has previously found that time expended on conferences is properly compensable. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 Fed.Appx. 93, 99 n.7 (3d Cir. 2006) *see also Gay Officers Action League v. Puerto Rico*, 247

---

[6] Attorney Shoup billed for two tasks on July 16, 2014: "Revise Motion for Injunction to be filed in Third Circuit" and "Telephone conference with Third Circuit clerk regarding filing of Expedited Notice of Appeal" (Dkt. No. 43-1 at 5). Meanwhile, Pamela Cox billed for two seemingly unrelated tasks on July 17, 2014: "Prepare Third Circuit Case Opening Documents" and "Proofread Brief and prepare it for filing." *Id.* at 5-6.

[7] Attorney Simpson's billing records reflect five conferences with Plaintiff Coffelt specifically. (Dkt. No. 43-1 at 5-6) (entries dated 5/28/2014; 6/4/2014; 7/8/2014; 7/13/2014; and 9/9/2014)). Attorney McLean's billing records reflect that she conferred with Plaintiff Coffelt over a three-day period (07/13/2014 to 07/15/2014) and did so for a reasonable amount of time. (Dkt. No. 43-2 at 4).

F.3d 288, 297 (1st Cir. 2001) ("[C]ourts must be careful not to throw out the baby with the bathwater. Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic") *cited with approval in Watts v. Blake-Coleman*, No. 11-CV-00061, 2014 WL 902231, at *3 (D.V.I. Mar. 7, 2014).[8] Given the complexity of this case and the fact that Plaintiffs' attorneys appear to have dedicated, at most, approximately five hours to conferring internally, the Court finds that such communication among counsel in a case of this complexity is reasonable and is therefore properly compensable.

Finally, the Court's own review of Plaintiffs' submissions does not reveal any work that the Court finds to be excessive, redundant, or otherwise unnecessary, and the Court notes that Plaintiffs ultimately achieved a significant victory on a novel legal issue. Accordingly, the Court finds that the 160.1 hours that Plaintiffs' counsel and their staff collectively expended on this matter are reasonable.

The Court will therefore award the full $52,175 in attorneys' fees requested by Plaintiffs.

## C. Compensability of Costs

Plaintiffs seek to recover $2,805.72 in costs that they incurred while pursuing their claims both in this Court and on appeal, pursuant Section 1988 and Section 1920. (Dkt. No. 43 at 11). These costs include: $1,514.30 for the transcript of the hearing on Plaintiffs' motion for a permanent injunction; the $505 fee for the notice of appeal; the $200 airfare for Attorney Simpson to attend the appellate oral argument; the $400 district court docket fee; $56.42 for postage

---

[8] Defendant cites two cases for the proposition that conferences between counsel are not compensable. (Dkt. No. 47 at 11 (citing *Banco Popular de Puerto Rico v. Paradise Motors, Inc.*, 2008 WL 4222085 (D.V.I. 2008) and *Morcher v. Nash,* 32 F.Supp.2d 239, 241-42 (D.V.I .1998)). However, both of these cases pertain to attorneys' fees under Section 541, not Section 1988.

expenses; and $130 for service of process expenses. *Id.* Plaintiffs have submitted records corroborating these expenses. (Dkt. No. 44-1).

Rule 39 of the Federal Rules of Appellate Procedure and Rule 54 of the Federal Rules of Civil Procedure govern the award of costs in federal court. Rule 39(e) of the Federal Rules of Appellate Procedure provides that "the following costs on appeal are taxable in the district court . . .  (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a bond or other security to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e). Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, with exceptions not relevant here, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). As a general matter, costs taxable under Rule 54(d)(1) are those listed in Section 1920. *Friedman v. Ganassi*, 853 F.2d 207, 209 (3d Cir. 1988). However, only a "court of the United States" may tax costs under Section 1920, and the District Court of the Virgin Islands does not so qualify. *Dr. Bernard Heller Found. v. Lee*, 847 F.2d 83, 87 (3d Cir. 1988.[9]

In addition to those costs that are taxable under Rule 39(e) and Rule  54(d)(1), Rule 54(d)(2) of the Federal Rules of Civil Procedure "recognizes the possibility of awards of attorney's fees and related non-taxable expenses . . . [provided] that there must be another source of authority for such an award." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995). Section 1988 provides one such additional source of authority. *Id.*

---

[9] Plaintiffs' argument that they are therefore entitled to costs under Section 1920 is therefore erroneous. (Dkt. No. 43 at 10). Instead, prevailing parties in the District Court of the Virgin Islands who incur certain costs "may be entitled, at the court's discretion, to reimbursement of those costs pursuant to [Section 541]." *Crown Bay Marina, L.P. v. Subbase Drydock, Inc.*, No. 18-CV-00068, 2021 WL 2930070, at *4 (D.V.I. July 12, 2021). Because Plaintiffs do not argue that they are entitled to costs under Section 541, the Court does not address the compensability of the costs Plaintiffs seek under that Section.

1. **Costs Compensable Under Rule 39(e) of the Federal Rules of Appellate Procedure**

Appellate costs that are taxable in district court include those that are listed in Rule 39(e) of the Federal Rules of Appellate Procedure. *City of San Antonio, Texas v. Hotels.com, L.P.*, 141 S. Ct. 1628, 1633 (2021) ("We hold that Rule 39 does not permit a district court to alter a court of appeals' allocation of the costs listed in subdivision (e) of the rule."). Provided both that the court of appeals has ordered as much and that "a proper application is made in the district court," a party moving a district court to tax these costs is "*entitled* to those costs—*i.e.*, has a right to obtain them and not merely seek them[.]" *Id.* at 1634 (emphasis added).

Here, the Third Circuit awarded costs to Plaintiffs (*qua* Plaintiffs-Appellants) (Dkt. No. 40-1 at 1-2), and Plaintiffs have applied to have these costs taxed by this Court. As relevant here, Rule 39(e) specifically lists the filing fee for the notice of appeal, as well as costs expended for preparation and transmission of the record and transcripts necessary for appeal. Fed. R. App. P. 39(e)(1) and (4). The Court will therefore award Plaintiffs the $1,514.30 transcript fee and the $505 fee for the notice of appeal as taxable appellate costs under Rule 39(e). However, the rule does not list travel expenses. As such, the Court may not tax this cost under Rule 39. *Hotels.com,* 141 S. Ct. at 1633.

2. **Non-Table Expenses Compensable Under Rule 54(d)(2) of the Federal Rules of Civil Procedure**

Under Section 1988, a prevailing party may recover for non-taxable expenses that are "incurred in order for the attorney to be able to render his or her services." *Abrams*, 50 F.3d at 1225. The "travel time and expenses of the attorney" and "postage" are considered such expenses and, as such, are "generally recoverable under section 1988." *Id.* With respect to Plaintiffs' $56.42

for postage expenses and the $200 airfare Plaintiffs expended for Attorney Simpson to attend the appellate oral argument, the Court sees no reason to deviate from this general rule and Defendants suggest none. The Court will therefore award Plaintiffs $56.42 for postage expenses, and $200 for the airfare for Attorney Simpson to attend the appellate oral argument, as non-taxable expenses under Rule 54(d)(2) that are compensable under Section 1988.

Likewise, courts in this Circuit have routinely found service of process costs to be compensable as a non-taxable expense, at least where the adverse party has not "offered either evidence that service of process in such a situation is typically less than that charged to plaintiff or a competing reasonable amount[.]" *Spruill v. Winner Ford of Dover, Ltd.,* No. 94-CV-00685, 1998 WL 186895, at *5 (D. Del. Apr. 6, 1998); *see also Sergeant Hurley v. Atl. City Police Dep't*, No. 93-CV-00260, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996) (observing that costs associated with service of process are typically compensable (collecting cases)); *cf. Sixth Angel Shepherd Rescue, Inc. v. Bengal*, No. 10-CV-01733, 2013 WL 5309269, at *4 (E.D. Pa. Sept. 23, 2013), *aff'd*, 620 F. App'x 146 (3d Cir. 2015) (deeming costs associated with service of process non-compensable where party failed to support corroborating documentation). As Defendants have not done so and Plaintiffs' requested service of process costs appear reasonable, the Court will therefore award Plaintiffs $130 for service of process expenses under Rule 54(d)(2) that are compensable under Section 1988.

The final cost Plaintiffs request is the $400 district court docket fee. While such a cost may well be taxable as a general matter under Section 1920, Plaintiffs have not provided this Court with any authority indicating that such a docket fee is compensable under Section 1988 and the Court is aware of none. Accordingly, the Court will not award Plaintiff the $400 district court docket fee.

In view of the foregoing, the Court will award Plaintiffs $2,405.72 in costs.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' motion. The Court will award Plaintiff $52,175 in attorneys' fees and $2,405.72 in costs, for a total award of $54,580.72.

An appropriate Order accompanies this Memorandum Opinion.

Date:   March 22, 2023                              _____/s/_____
                                                    WILMA A. LEWIS
                                                    District Judge

---

[10] Specifically, the Court will award $1,514.30 for the transcript of the hearing on Plaintiffs' motion for a permanent injunction; the $505 fee for the notice of appeal; the $200 airfare for Attorney Simpson to attend the appellate oral argument; $56.42 for postage expenses; and $130 for service of process expenses.